UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Alpha L. Kaisamba-Kanneh,  File No. 22-cv-2661 (ECT/TNL)

      Plaintiff,

v.  **OPINION AND ORDER**

Dakota County District Court; Minnesota Guardian Ad Litem Board; Hon. Kathryn Davis Messerich; Hon. Judge Tim D. Wermager; Hon. Judge David Lutz; Hon. Judge Vicki Vial Taylor; Hon. Judge Joseph Carter; Maria King, *Court Administrator, Dakota County District Court*; and Melanie Sanchez, *Supervisor, Minn. Guardian Ad Litem Program*,

      Defendants.

---

Alpha L. Kaisamba-Kanneh, pro se.

Janine Wetzel Kimble, State Attorney General's Office, St. Paul, MN, for Defendants Dakota County District Court, Minnesota Guardian Ad Litem Board, Hon. Kathryn Davis Messerich, Hon. Judge Tim D. Wermager, Hon. Judge David Lutz, Hon. Judge Vicki Vial Taylor, Hon. Judge Joseph Carter, Maria King, and Melanie Sanchez.

---

      Pro se Plaintiff Alpha L. Kaisamba-Kanneh alleges that Defendants—a Minnesota state court, the state Guardian ad Litem Board, and several state court judges, a court administrator, and a Guardian ad Litem supervisor, each in their official capacity—violated his constitutional rights during custody proceedings over his minor child. Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion will be granted under Rule 12(b)(1) because the Eleventh Amendment precludes

suits against arms of the state and damages claims against state employees in their official capacities. If that weren't so, the Complaint would be dismissed for other reasons. There is no private right of action under the two federal criminal statutes cited in the Complaint. The Defendant Judges, Court Administrator, and Guardian Ad Litem Supervisor enjoy judicial and quasi-judicial immunity from suit for their acts performed during the custody proceedings. Finally, the Complaint fails to state a claim because it does not include sufficient factual allegations to plausibly support any of Kaisamba-Kanneh's apparent claims.

I[1]

Kaisamba-Kanneh brings this action "[p]ursuant to 42 U.S.C. § 1983," raising claims of "Due Process," "Unreasonable Search and Seizure," "Concealment, removal, or mutilation generally (perverting the course of justice) 18 U.S. § 2071" [sic] and "Conspiracy to cause arrest pursuant to 18 U.S.C. § 241" against the Dakota County District Court, Dakota County District Judges Messerich, Wermager, Lutz, Vial Taylor, and Carter, Dakota County Court Administrator Maria King, the Minnesota Guardian ad Litem Board, and Minnesota Guardian ad Litem Program Supervisor Melanie Sanchez. Compl. [ECF No. 1] at 2–4. The Complaint explicitly names the individual defendants only in their official capacities. *Id*. at 2–3. Kaisamba-Kanneh seeks $80 million in

---

[1]   In analyzing a facial challenge to subject-matter jurisdiction under Rule 12(b)(1) or a Rule 12(b)(6) motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Accordingly, the relevant facts are drawn from Kaisamba-Kanneh's Complaint and are accepted as true.

2

damages for his psychological trauma, emotional anguish, pain and suffering, humiliation and exposure to public contempt, loss of time to focus on work and business, loss of enjoyment of activities, loss of time to be present for his son, and loss of opportunity to be a continual part of his son's life story. Compl. at 6.

The factual allegations supporting Kaisamba-Kanneh's claims are sparse. From what can be inferred from the Complaint, Kaisamba-Kanneh was involved in court proceedings in Dakota County District Court that he believes resulted in the violation of his civil rights. *Id*. at 4–5. Defendants have submitted public filings from the child custody proceedings that provide context for Kaisamba-Kanneh's allegations.[2]

Kaisamba-Kanneh is the biological father of minor JLK-K, the subject of the custody proceedings. Kimble Decl. Ex. A at 2. In March 2014, Bette Baby J. Swarray and Kaisamba-Kanneh granted temporary custody of then-seven-year-old JLK-K to JLK-K's

---

[2]   In support of their motion to dismiss, Defendants submitted a declaration attaching the Findings and Order and the Register of Actions from the custody docket in the underlying Dakota County child custody proceeding. *See* Kimble Decl. [ECF No. 8] Exs. A & B. In resolving a Rule 12(b)(6) motion, courts ordinarily do not consider matters outside the pleadings. *See* Fed. R. Civ. P. 12(d); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Courts may, however, "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean*, 858 F.3d at 526 (internal quotation marks and citations omitted). No party has questioned the authenticity of these documents from the child custody proceedings, which are matters of public record. These filings are therefore appropriate to consider here. In addition, the Minnesota Court of Appeals' opinion, *J.L.K.-K. v. Swarray*, No. A18-0244, 2019 WL 509950, at *1 (Minn. Ct. App. Feb. 11, 2019), is a public court record of which the Court may take judicial notice and properly consider in the context of Defendants' motion. *See, e.g., Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (citing *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005)).

paternal grandmother, Mamawa Kaisamba, and Joseph Sormana. *Id*. at 3. At that time, Kaisamba-Kanneh was living in Sierra Leone, West Africa, and Mamawa Kaisamba and Joseph Sormana lived in Dakota County, Minnesota. *Id*. At some point, Kaisamba-Kanneh moved to Atlanta, Georgia, but Bette Baby Swarray remained in West Africa. *Id*. In December 2017, Mamawa Kaisamba and Joseph Sormana were awarded sole legal and physical custody of JLK-K, and the Minnesota Court of Appeals later affirmed that decision. *Id*.[3]

In April 2021, Kaisamba-Kanneh moved for compensatory parenting time over JLK-K, and the district court granted his request. *Id*. In August 2021, Kaisamba-Kanneh moved for sole legal and physical custody of JLK-K. *Id*. On November 4, 2021, the district court appointed a Guardian ad Litem to make recommendations regarding custody and parenting time. *Id*. On March 29, 2022, the Guardian ad Litem issued a comprehensive report recommending that Mamawa Kaisamba and Joseph Sormana continue with sole legal and physical custody over JLK-K. *Id*.

On August 18, 2022, JLK-K began living with Kaisamba-Kanneh, and on September 6, 2022, the Dakota County district court awarded Kaisamba-Kanneh temporary custody of his child. *Id*. at 4. On October 18, 2022, the Guardian ad Litem issued an

---

[3] The Court of Appeals opinion explains that Kaisamba-Kanneh revoked the temporary custody agreement in December 2016. *J.L.K.-K.*, 2019 WL 509950, at *1. Mamawa Kaisamba then sought an order for protection against Kaisamba-Kanneh on behalf of herself and the child, which first was granted in December 2016, but then dismissed after an evidentiary hearing in February 2017. *Id*. Mamawa Kaisamba and Joseph Sormana then commenced a third-party custody action. *Id*. The district court granted Mamawa Kaisamba and Joseph Sormana's petition for third-party custody, and Kaisamba-Kanneh appealed that decision to the Minnesota Court of Appeals. *Id*.

updated custody evaluation and recommended awarding Kaisamba-Kanneh permanent sole legal and physical custody of JLK-K. *Id*. The Findings and Order explained that the Guardian ad Litem was influenced by the now-16-year-old JLK-K's expressed desire to continue living with his father in Atlanta, and believed that this arrangement served the child's best interests. *Id*. Accordingly, on October 25, 2022, Dakota County District Judge Joseph Carter awarded sole legal and physical custody of JLK-K to Kaisamba-Kanneh. *Id*. at 5–6.

Kaisamba-Kanneh's claims for damages in this case appear to be based on Defendants' alleged wrongful conduct during these custody proceedings. According to the Complaint, Defendants "[m]anipulat[ed] Court records" by "altering [a] trial transcript to produce a Judgment by Fraud." Compl. at 4. Defendants also "[c]onceal[ed] / remove[ed] a motion." *Id*. at 5. "Judicial officers [made] false statements in order(s)" by "inserting materially significant statements to aid the opposing party." *Id*. Defendants "[p]erpetual[ly] show[ed] [] prejudice and judicial bias in the course of proceedings by requiring [Kaisamba-Kanneh] to comply with orders that [the] other parties flout[ed] without consequence." *Id*. Defendants did not allow an important witness for Kaisamba-Kanneh to be heard during the court proceedings, and "instead appoint[ed] a third party to speak for the very witness who [was] neither incompetent nor found to be unfit to speak before the court." *Id*. Electronic data was searched and seized without a warrant. *Id*. Finally, Defendants "[c]onspir[ed] to cause an arrest." *Id*.

The Complaint does not specify which Defendant performed which allegedly wrongful conduct. It does, however, allude to a "forthcoming proper filing [that] will have

5

in excess of three hundred (300) pages of combined statements of complaint, affidavits, and exhibits in support to give Defendants fair case to reflect on, study, compare to court records and complaints filed against them and the opportunity to prepare and offer a defense for said claims." *Id*. at 7.  The Complaint thus requests an "Order granting sixty (60) calendar days to perfect and file a complete and comprehensive complaint in this matter." *Id*. at 6.  Since the Complaint was filed on October 24, 2022, Kaisamba-Kanneh has not filed an amended complaint.  *See generally, Docket*.

Defendants have moved to dismiss on several grounds, arguing that: (1) this Court lacks subject-matter jurisdiction over Plaintiff's claims because of Defendants' Eleventh Amendment immunity; (2) no private right of action exists for criminal claims brought under 18 U.S.C. §§ 2017 and 241; (3) the claims against the individual Defendants are barred by judicial and quasi-judicial immunity; and (4) the Complaint fails to provide plausible factual allegations to support any claim.

## II

Defendants argue that Kaisamba-Kanneh's claims must be dismissed for lack of subject-matter jurisdiction.  Defs.' Mem. in Supp. [ECF No. 7] at 4–5.  Absent waiver of immunity by the State or a valid congressional override, the Eleventh Amendment bars suit against a state or state agency "for any kind of relief."  *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *see also Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) ("The Eleventh Amendment provides states, and state agencies, with immunity . . . from suits brought by their own citizens." (internal citation omitted)).  The Dakota County District Court and the Guardian ad Litem Board are arms of the state, and as such, immune

6

from damages claims under the Eleventh Amendment.[4] *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997); *Favors v. Nicollet Cnty. Dist. Ct.*, No. 21-cv-439 (ECT/ECW), 2021 WL 2221624, at *1 (D. Minn. June 2, 2021); *Lanners-Ford v. Minnesota*, No. 20-cv-1206 (PAM/HB), 2020 WL 8839489, at *1 (D. Minn. June 9, 2020) ("[A] state court is an arm of the state government, which the Eleventh Amendment protects from suit in federal court in all but very limited circumstances.").

The Eleventh Amendment also bars claims for damages against state employees sued, as here, in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). This is because "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Graham*, 473 U.S. at 165); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining a suit against a state official in his or her official capacity "is no different from a suit against the State itself").[5] Kaisamba-Kanneh argues that "this court does have

---

[4] The vulnerability of the state's purse is the most important consideration in Eleventh Amendment immunity determinations. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994). The Guardian ad Litem Board is comparable to a university board of regents or state court that has a degree of independence but would pay any award for damages from the state treasury. *See, e.g., Brine v. Univ. of Iowa*, 90 F.3d 271, 275 (8th Cir. 1996) (holding the University of Iowa Board of Regents was subject to Eleventh Amendment immunity).

[5] Under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex parte Young*, 209 U.S. at 159–60); *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh

subject matter jurisdiction with respect to the Defendants even if not in their official capacity but in their personal capacity." Pl.'s Mem. in Opp'n [ECF No. 12] at 1. The problem is, the Complaint explicitly seeks relief against the individual Defendants only in their official capacities. *See* Compl. at 2–3 (listing "official capacity" below each individual Defendant). Accordingly, Kaisamba-Kanneh's damages claims against Defendants are barred by the Eleventh Amendment and will be dismissed.

### III

### A

If the Eleventh Amendment didn't bar Kaisamba-Kanneh's claims, they would fail for several non-jurisdictional reasons. Defendants argue that Kaisamba-Kanneh's claims under 18 U.S.C. §§ 2071 and 241 should be dismissed because these criminal statutes do not provide for private rights of action. Section 2071 proscribes the willful and unlawful concealment, removal, or mutilation of court documents. *See* 18 U.S.C. § 2071. Section 241 makes it a crime to conspire to violate a citizen's constitutional or statutory rights.

---

Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (cleaned up)). However, the exception is "narrow"; it "applies only to prospective relief" and "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985) ("[T]he issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.")). Here, the Complaint seeks relief only in the form of damages for past acts—Kaisamba-Kanneh has already been given custody of his child, and he does not allege the existence of an ongoing violation of federal law or seek any relief that might be characterized as prospective. *See generally* Compl. Accordingly, *Ex parte Young* does not apply.

Both of these statutes are criminal in nature and as such, do not provide for a private right of action. *See Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (no private right of action under § 2071); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (no private right of action under § 241).

B

Defendants further argue the Complaint should be dismissed because they are protected by judicial and quasi-judicial immunity. Kaisamba-Kanneh's causes of action against Judges Messerich, Wermager, Lutz, Vial Taylor, and Carter are barred by judicial immunity. State court judges "are not liable to civil actions for their judicial acts," even when acting in excess of jurisdiction, maliciously, or corruptly. *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Whether a judge's conduct is "judicial" turns on whether the act is a "function normally performed by a judge . . . *i.e.*, whether [Kaisamba-Kanneh] dealt with the judge[s] in [their] judicial capacity." *Stump*, 435 U.S. at 362.

Here, the only reasonable inference is that the judges are being sued for judicial acts, as Kaisamba-Kanneh's allegations attack traditional judicial actions. Specifically, the Complaint alleges wrongful conduct relating to a "trial transcript," "motion," "order(s)," compliance with orders, and calling witnesses. Compl. at 4–5. These are routine functions performed by trial court judges. And Kaisamba-Kanneh alleges no facts in the Complaint allowing a plausible inference that the lawsuit is based on any non-judicial acts.

In addition, the claims against Guardian ad Litem Program Supervisor Sanchez and Court Administrator King are barred by quasi-judicial immunity. "[O]fficials are entitled

to absolute immunity from civil rights suits for the performance of duties which are 'integral parts of the judicial process.'" *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). This includes guardians ad litem and court administrators. *See McCuen v. Polk County*, 893 F.2d 172, 174 (8th Cir. 1990) (holding a guardian ad litem's absolute immunity extends to their duties of preparing reports and making recommendations to family court); *Boyer v. Cnty. of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) (per curiam) (holding court clerks have quasi-judicial immunity when performing tasks integral to the judicial process). In *Dornheim*, the court affirmed a Fed. R. Civ. P. 12(b)(6) dismissal where the plaintiffs "failed to establish that any of the individuals granted absolute immunity [were] acting outside the scope of his or her role within the judicial process." 430 F.3d at 925. Like *Dornheim*, Kaisamba-Kanneh fails to allege Guardian ad Litem Supervisor Sanchez and Court Administrator King were acting outside of their roles within the judicial process. Therefore, they are protected by quasi-judicial immunity.

C

Even if there was subject-matter jurisdiction and Defendants were not immune, the Complaint fails to state a claim. It is worth noting that the Complaint does not identify causes of action in the traditional "Count" style. *See* Compl. at 3–5. Rather, Kaisamba-Kanneh asserts jurisdiction pursuant to § 1983, *id.* at 3, and that "at its core" the action is about: "Due Process," "Unreasonable Search and Seizure," "perverting the course of justice" under 18 U.S.C. § 2071; and "conspiracy to cause arrest" under 18 U.S.C. § 241. *Id*. at 4. Defendants' motion to dismiss reasonably interprets the four identified claims as

Kaisamba-Kanneh's causes of action. Defs.' Mem. in Supp. at 5, 10. Kaisamba-Kannah concedes the deficiencies of his Complaint, responding in briefing that "[t]he complaint does not clearly identify any claims and Plaintiff therein seeks permission to file an amended complaint." Pl.'s Mem. in Opp'n at 5. Indeed, the Complaint lacks sufficient factual allegations to sustain any cause of action.

A pro se plaintiff's material allegations should be liberally construed in favor of the plaintiff. *Peck v. Hoff*, 660 F.2d 371, 373 (8th Cir. 1981). Nonetheless, conclusory allegations and legal conclusions are not enough to sustain a complaint. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] complaint must contain sufficient factual matter" to state a claim for relief. *Iqbal*, 556 U.S. at 678.

Here, the Complaint fails this test. The allegations in the Complaint are almost exclusively conclusory. Compl. at 4–5 ("Manipulating Court records") ("Making false statements") ("Perpetual showing of prejudice and judicial bias") ("Effecting an unlawful search and seizure of electronic data"). Take, for example, the allegation that Defendants "Manipulat[ed] Court records." *Id*. at 4. The Complaint does not allege which Defendant manipulated court records, what court records were manipulated, how the court records were manipulated, or the impact of this manipulation on Kaisamba-Kanneh. And his other conclusory allegations fare no better.

When "there are so few facts alleged in the complaint, the court need not address each individual claim to make a sufficiency determination on a 12(b)(6) motion to dismiss." *Glick*, 944 F.3d at 717. In *Glick*, the Eighth Circuit affirmed dismissal for failure

11

to state a claim under Federal Rule of Civil Procedure 12(b)(6) where "all but one of the allegations in the amended complaint constitute[d] mere legal conclusions and recitations of the elements of the causes of action" and "almost no essential material facts." *Id*. The Complaint here is even less developed than *Glick*. Kaisamba-Kanneh only provides legal conclusions, but he does not even identify which Defendants performed which of the alleged constitutional violations. The Complaint lacks the factual allegations necessary to support any cause of action.

## D

Finally, it bears noting that Kaisamba-Kanneh's stated intention to file a complete and comprehensive complaint does not alter the outcome of this motion to dismiss. The Complaint states "this complaint is neither complete nor comprehensive as the forthcoming proper filing will have in excess of three hundred (300) pages of combined statements of complaint, affidavits, and exhibits in support." Compl. at 7. And in the prayer for relief, he asks for "[an] Order granting sixty (60) calendar days to perfect and file a complete and comprehensive complaint in this matter." *Id*. at 6. In briefing, Kaisamba-Kanneh reiterates that "leave of court is being sought to bring forward a full complaint renders [sic] the Motion for dismiss and arguments set forth therein moot and they are arguing against something that has not been filed." Pl.'s Mem. in Opp'n at 6. Kaisamba-Kanneh did not *require* leave of the Court to file a full and complete complaint—he had a further 21 days to amend his Complaint even after Defendants' Motion to Dismiss was served. *See* Fed. R. Civ. P. 15(a)(1)(B). Yet he did not amend his Complaint, nor did he move for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2) once those 21 days expired.

On a motion to dismiss, only the pleadings before the Court can be considered. *Glick*, 944 F.3d at 717. Kaisamba-Kanneh's intention to file an amended complaint does not save his claims.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss [ECF No. 4] is **GRANTED**; and

2. The Complaint [ECF No. 1] is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 1, 2023

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court